IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff | : | 4:CR-04-0271 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| WILLIAM J. NEIDIG, JR., | : | |
| | : | |
| Defendant | : | |

**O R D E R**

July 3, 2008

**BACKGROUND:**

In 2004, William J. Neidig ("William") was indicted for conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. Later that year, William pled guilty and agreed to forfeit a property located at 1347 West Mulberry Street, Coal Township, Pennsylvania. We entered a preliminary order of forfeiture and directed the government to provide public notice of the forfeiture. The government provided notice by publication in a newspaper in the county in which the property was located. The deadline for filing a claim to the property was May 13, 2005. On December 19, 2005, having received no claims to the property, we entered a final order of forfeiture.

On January 31, 2006, Charles Neidig, Jr. ("Charles"), the father of William,

filed a "Motion for the Return of Seized Property" in which he sought the return of the seized property at 1347 West Mulberry Street that William had agreed to forfeit.  (Rec. Doc. No. 472.)  On February 7, 2006, we denied the motion because we concluded that Charles had not shown excusable neglect for his failure to file a timely claim and also found that his claim lacked merit.  (Rec. Doc. No. 499.)

      Charles appealed our February 7, 2006 order.  On November 7, 2007, the Third Circuit vacated the order and remanded the case for further proceedings.  Specifically, the Third Circuit found that although Charles had not presented any basis for a finding of excusable neglect in his motion with this court, his appeal raised several arguments that "might conceivably demonstrate excusable neglect" and that we denied his motion without providing Charles the opportunity to present these issues in a reply brief.  United States v. Neidig, 253 Fed. Appx. 239, 241 (3d Cir. 2007).  The Third Circuit also concluded that Charles' claim does not conclusively lack merit on its face because the criminal forfeiture statute would allow Charles to prevail if he had a legal right, title, or interest in the property that was superior to his son's, which would be governed by Pennsylvania law.  Id.

      Since the remand, we have sought and obtained counsel for Charles.  On December 7, 2007, we ordered Charles to file a brief in support of his motion that addresses the excusable neglect issue as well as the merits of his claim.  On May

15, 2008, Charles filed his brief. (Rec. Doc. No. 616.) An opposing brief has been filed and the time for filing a reply has passed. For the following reasons, we will deny Charles' motion.

**DISCUSSION:**

### I. Excusable Neglect

Because Charles' motion was filed after the entry of the final order in this case, it shall be treated as a motion for relief from final judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. <u>United States v. Neidig</u>, 253 Fed.Appx. 239, 240 (3d Cir. 2007) (citations omitted). Rule 60(b) provides for such relief on the basis of, among other things, "mistake, inadvertence, surprise, or excusable neglect."

As alluded to in the Third Circuit's opinion, Charles contends that his motion should be entertained despite its untimeliness because of excusable neglect. (Rec. Doc. No. 616, at 4-5.) Specifically, he contends that the notice of forfeiture was published in a single newspaper, <u>The Daily Item</u>, and that the federal prison in which Charles is incarcerated does not subscribe to that publication. (<u>Id.</u>) Thus, it was impossible to know the existence and timing of the forfeiture proceedings. (<u>Id.</u>)

The test for excusable neglect requires the court to consider and weigh the totality of the circumstances. Nara v. Frank, 488 F.3d 187, 193-94 (3d Cir. 2007) (citation omitted). Specifically, we consider: 1) the danger of prejudice to the other party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay and whether it was within the movant's control; and 4) whether the movant acted in good faith.

We believe these factors weigh against concluding that Charles had excusable neglect for his failure to timely file his objection to the forfeiture. Most importantly, we reject Charles' contention that he did not receive notice because the prison in which he is incarcerated did not subscribe to the newspaper in which the notice was published. Other evidence appears to establish that Charles was in fact aware of the forfeiture. For example, in his brief, Charles states that "promptly upon discovering the existence of the forfeiture proceedings, Charles made multiple good faith attempts, although fruitless, to obtain counsel and secure his interest in the Property." (Rec. Doc. No. 616, at 5.) Charles then cites to Exhibit A, which is a collection of documents which appear to be Charles' attempt to obtain legal counsel and file a lien on the property. (Rec. Doc. No. 612-2.) This exhibit contains a lien on the property that Charles attempted to file in the United States District Court for the Middle District of Pennsylvania, which was rejected as

an improper filing because it was not a formal lawsuit. (Id. at 12-16, 18.) This attempt to file the lien is dated May 18, 2005. (Id. at 16.) Similarly, the letters written to various attorneys seeking legal assistance on filing a lien contain dates beginning with June 16, 2005. (Id. at 4.)

In the instant case, the deadline for filing a claim was May 13, 2005. On December 19, 2005, after receiving no claims on the property, we entered a final order of forfeiture. Yet, it was not until January 31, 2006 that Charles filed his motion. Although Charles' brief and his exhibit do not establish conclusively that Charles knew of the forfeiture prior to the May 13, 2005 deadline, at the very least he knew of it shortly thereafter on May 18, 2005 when he attempted to file a lien in the Middle District of Pennsylvania. Thus, while he may have had excusable neglect for failing to file a claim by our May 13, 2005 deadline, there is no excusable neglect for his filing a claim on January 31, 2006, which is more than half a year after he evidently became aware of the forfeiture proceedings and more than a month after we entered a final order forfeiture. Therefore, we find that Charles has not established excusable neglect for his failure to timely file a claim and deny his motion on this ground.

## II.  Merits Analysis

Even if we were to consider the merits of the argument, we conclude that his claim fails. 21 U.S.C. § 853(n)(6)(A) is the criminal forfeiture statute and states that Charles may prevail in his challenge to the forfeiture if he can prove by a preponderance of the evidence that he has "a legal right, title, or interest in the property . . . [that] was superior to any right, title, or interest of [William] <u>at the time of the commission of the acts which gave rise to the forfeiture of the property</u>." (emphasis added). Charles asserts that he has a superior right or interest in the property. (Rec. Doc. No. 616, at 5-9.) Specifically, he asserts that he deeded the property to William in contemplation of his impending incarceration. (<u>Id.</u> at 1.) He also asserts that Charles and William entered into an oral agreement in which William would improve and rent the property and deposit the proceeds into Charles' prison account. (<u>Id.</u> at 2.) Therefore, Charles contends that because William failed to rent the property and deposit any money into Charles' account, a constructive trust should be created to benefit Charles and that this trust constitutes his superior interest in the property. (<u>Id.</u> at 5-9.) Additionally, we note that his motion contains an affidavit from William which admits the existence of the oral agreement and his breach of the agreement. (Rec. Doc. No. 472, at 4.)

In <u>Nagle v. Nagle</u>, the Pennsylvania Superior Court described a constructive trust as follows:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convert it to another on the ground he would be unjustly enriched if he were permitted to retain it. The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.

799 A.2d 812, 819 (Pa. Super. 2002) (citations omitted). The problem with Charles' theory is that "a constructive trust is a remedy that a court devises after litigation." United States v. Strube, 58 F.Supp.2d 576, 586 (M.D.Pa. 1999) (Rambo, J.) In Strube, the court considered whether a constructive trust could operate as a superior interest to the defendant's in a criminal forfeiture. Id. The court concluded that a constructive trust could not exist because it would "not have been shown to exist at the time the acts were committed," which is when the government's interest vests under § 853(c). Id. The court went on to state:

> Congress, in other words, devised a statutory remedial scheme that reaches back to the time of the criminal acts to forfeit that property to the United States. The statute thus creates a retroactive legal fiction similar to a constructive trust for the benefit of the United States. It is not open to a court to fashion another remedy (a competing fiction) that also reaches back to snatch the property away from the United States-which is exactly what a constructive trust would do.

Id. In other words, even if we were to conclude that the remedy of a constructive trust is an appropriate remedy for William's failure to abide by the oral agreement, it would not relate back to the time the agreement was broken. Yet, on the other

hand, the government's interest explicitly relates back to the time the crime was committed under § 853(c). Therefore, Charles' claim fails on the merits as well.

Furthermore, we believe that the doctrine of laches should operate to bar Charles from asserting an equitable claim in the property. The doctrine of laches bars equitable relief when the complaining party has failed to exercise due diligence in asserting its rights and the delay from this failure has caused prejudice to the other party. In re Estate of Scharlach, 809 A.2d 376, 382 (Pa. Super. 2002) (citing Sprague v. Casey, 550 A.2d 184, 187-88 (Pa. 1988). In the instant case, Charles' claim is that William violated their oral agreement from its inception, which would have been in December of 2001, because William never rented the property and deposited rental proceeds in Charles' prison account. Yet, Charles did not attempt to secure a lien or adjudicate his interest in the property until May of 2005, which was after William had agreed to forfeit the property. Furthermore, we note that this delay has prejudiced the government. Had Charles attempted to secure an interest in the property earlier, the government would likely have been aware of Charles' alleged interest and would have served notice of the forfeiture directly upon him. Therefore, we find that the doctrine of laches bars Charles' recovery.

Furthermore, we believe the doctrine of unclean hands should also operate to

negate Charles' contention of a constructive trust. The doctrine of unclean hands may bar equitable relief when the party applying for such relief is guilty of bad conduct relating to the matter at issue. County of Luzerne v. Luzerne County Retirement Board, 882 A.2d 531, 536 (Pa. Commw. 2005) (citing Terraciano v. PennDOT, 753 A.2d 233, 238 (2000)). The instant case reeks of bad conduct by Charles. First, it appears that the property at issue has long been used by the Neidigs to conduct their criminal activities. On September 5, 2001, Charles entered a guilty plea in Middle District of Pennsylvania Criminal Case No. 01-183-01 to an information charging him with conspiracy to distribute cocaine. Evidence from that case shows that Charles had been using the property for his drug activities. When Charles was arrested in that case by DEA Agents while driving to make a drug purchase, he admitted to the agents that there was a scale, paraphernalia, and drug proceeds at his residence at 1347 West Mulberry Street. (Charles' Presentence Investigation Report, Rec. Doc. No. 619, at 5-6.) He gave his consent for his residence to be searched which resulted in the confiscation of a scale, 83.8 grams of LSD, and $3,340 in cash. (Id. at 6.) Thus, although the government declined to seek forfeiture of the residence in that case, it appears that it could have. In any event, it is clear that Charles has used this residence in the past for his drug activities, and therefore should be barred from asserting an

equitable remedy to prevent the forfeiture of the property due to his son's drug activities. In other words, Charles' transfer to his son and his subsequent attempt to assert a lien on the property and claim a constructive trust in order to reclaim it simply appears to be an attempt to avoid the forfeiture of a property that has long been used for drug activities and therefore subject to forfeiture.

Additionally, we note the curious timing of Charles' transfer to his son. Charles transferred the property to William for one dollar on December 14, 2001, which was between the time he pled guilty and the time he was sentenced in his criminal case. Of course, he contends that the purpose of this transfer was so William would rent the property and deposit the proceeds into his prison account, even though these conditions do not appear in the deed and these goals could have easily been accomplished by a simple contract, rather than a transfer of the property. Similarly, William agreed to forfeit the property in his plea agreement and stated that no other individual had a superior interest to his. It was not until after he was sentenced that he reversed his previous position and now asserted the oral agreement between him and Charles. In other words, the needless transfer to his son appears to be an attempt to avoid a possible forfeiture due to Charles' criminal proceedings. Similarly, the alleged oral agreement between Charles and William appears to be another attempt to avoid an actual forfeiture in William's

case. Thus, we find that the doctrine of unclean hands should operate to negate Charles' contention of a constructive trust and conclude that his motion may be denied on these grounds as well.

Finally, we note that there is an outstanding "Motion for Discovery" that was filed by Charles on December 20, 2007. (Rec. Doc. No. 601.) In that motion, he requests that we "grant discovery, the previous motion for counsel, and the extension of time in order to perfect and file a viable brief. (Id., ¶ 3.) Because we have already sought and obtained counsel for Charles and that counsel was provided an opportunity to investigate Charles' claim and prepare a counseled brief on the matter, we will deny this motion as moot.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Charles Neidig's Motion for Return of Seized Property is DENIED. (Rec. Doc. No. 472.)

2. Charles' Neidig's Motion for Discovery is DENIED as moot. (Rec. Doc. No. 601.)

s/James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge
